UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WILLIAM CROFT

**COMPLAINT**

Plaintiff,

Civil No. :

v.

**JURY TRIAL DEMANDED**

VILLAGE OF NEWARK, VILLAGE OF
NEWARK POLICE DEPARTMENT,
CHIEF OF POLICE, DAVID CHRISTLER,
in his Official and Individual Capacity,

Defendants.

## PRELIMINARY INTRODUCTION

1.  This action is brought by the Plaintiff a member of the Army National Guard.

    Plaintiff alleges retaliation in violation of the Uniformed Services Employments

    and Reemployment Rights Act of 1964, "USERRA" 38 U.S.C. § 4301 *et seq.*.

    Specifically, Plaintiff claims that he has been discriminated against and retaliated

    against by defendants due to his military status and for having had to take leave

    from defendants for military obligations.

## JURISDICTION, VENUE & STANDING

2.  Jurisdiction of this Court is specifically invoked pursuant to 38 U.S.C. §

    4323(b)(2) and/or (3); along with 28 U.S.C. § 1331 (federal question) and 20

    C.F.R. 1002.305.

3.  Venue properly lies in the Western District of New York pursuant to 38 U.S.C. §

    4323(c), 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132 (e) (2), because the claim

arose in this judicial district, the defendant is doing business, has a place of business and is a resident of this district.

4.    Plaintiff has standing to bring the claims asserted herein pursuant to 38 U.S.C. § 4323(a)(3) and (f) along with 20 C.F.R. 1002.308.

## PARTIES

5.    Plaintiff William Croft is an individual male who at all times relevant herein was a resident of Newark, New York located in the County of Wayne. Plaintiff is, and has been for the relevant time period herein, enlisted in the United States Armed Forces as a member of the United States National Guard. Plaintiff is a covered employee for the purpose of 38 U.S.C. § 4301 *et. seq.*.

6.    Defendant Village of Newark is a municipal corporation, organized, existing and operating under the laws of the State of New York. Defendant is an employer for the purpose of 38 U.S.C. § 4301 *et. seq.*.

7.    Defendant Village of Newark Police Department is a department existing under the Village of Newark and upon information and belief is a municipal corporation, organized and existing under the laws of the State of New York. Defendant is an employer for the purpose of 38 U.S.C. § 4301 *et. seq.*. Defendant Village of Newark Police Department is a political subdivision of the State of New York meaning they are a "private employer" for the purposes of the claims alleged

Page -2-

herein pursuant to 38 U.S.C. § 4323(i).

8. Defendant Village of Newark Chief of Police David Christler (" Chief Christler") is the highest ranking supervisor within the Defendant Village of Newark Police Department. Upon information and belief Chief Christler is also an individual male, who was at all times relevant herein a resident of the County of Wayne, State of New York.

## FACTUAL ALLEGATIONS

9. Plaintiff was hired as a police officer by the Village of Newark Police Department in July of 2006 and was set to start his employment on August 8, of 2006.

10. Plaintiff was a laterally transferred from Lyons Police Department.

11. During Plaintiff's interview, there were several questions about his military affiliation one of which was the question and response: "will you be deployed any time soon?" Plaintiff's answer was "not to my knowledge."

12. When Plaintiff was offered the job with the Village of Newark Police Department, he was told that he would be brought in with 11 years service for vacation and pay purposes.

13.   In June of 2007, Plaintiff took the Sergeants' test. Plaintiff scored an 81 on the test which ranked him number one on the promotion list.

14.   The number two person scored a 76 and number three person scored a 74. Both of these individuals, who upon information and belief were not serving in the United States Armed Forces, had been appointed provisionally before Plaintiff was hired.

15.   The test results came out in August of 2007 and one of the Village of Newark Police investigators retired the same month.

16.   During this time period, Plaintiff was away for a two week period attending mandatory military school.

17.   When Plaintiff returned, he applied for the Sergeant and Investigator positions. At the time there were two positions open for Sergeant and one position open for Investigator.

18.   As described above, Plaintiff was number one on the list for Sergeant at this time and was the most qualified individual for either of the three positions out of the candidates that applied.

19.   Despite this, the Village of Newark Town Board did not interview Plaintiff for
      either Sergeant position nor was Plaintiff interviewed for the Investigator position.
      Instead they gave number two (Jimmy Thompson, scored 76) and number three
      (Jay Warren, scored 74) permanent promotions to Sergeants and number three
      was also promoted to Investigator, provisionally.

20.   The decision to promote individuals who were not as qualified nor that scored as
      high as Plaintiff on the Sergeants examination was because of Plaintiff's status
      in the United States Armed Forces National Guard.  Upon information and belief
      the two individuals who were promoted were not enlisted in any way in the
      military.

21.   From January to March, 2008, Plaintiff left the Department to serve as an
      Instructor at the Officer Candidate School at Ft. McClellan in Alabama.

22.   In June of 2008, Plaintiff took the Investigator test and scored number one on
      the list.  At this time, Jay Warren, the individual who had been previously
      appointed as Sergeant and provisional investigator was promoted to a
      permanent Investigator.

23.   Again, Plaintiff received no interview for this position despite that fact that
      Plaintiff is more qualified, scored higher on the examinations, and has more
      schooling than either of the other candidates, who are both civilians and police.

Page -5-

The only distinguishing characteristic between the more qualified Plaintiff and the other individuals who obtained the promotions was that Plaintiff was a member of the United States Armed Forces (and as such missed some time serving in such capacity) and the other officers were not.

24.    Additionally, Plaintiff has more time working as a police officer than either of individuals promoted above him and Plaintiff was a Captain in the Army National Guard, so Plaintiff had more leadership training than either of them including a one year tour in Kuwait and Iraq 2003-2004 where Plaintiff received a Bronze Star and an above center of mass Officer Evaluation Review (OER).

25.    In August of 2007, Plaintiff was given a pay raise and 20 vacation days as the Village of Newark Town Board had promised him. The Board then took back 5 vacation days and docked Plaintiff's pay until they got back the difference in pay saying they never promised Plaintiff those days.

26.    In June of 2008, Plaintiff returned to instructing OCS through September 28, 2008.

27.    As of October 1, 2008, Plaintiff was on a tour at the Syracuse Military Entrance Processing Point (MEPS) through September, 2008.

28.    When Plaintiff spoke to the Chief Christler in August, 2008, he asked when
       Plaintiff's interview for Investigator was, and Chief Christler told Plaintiff that he
       had already hired an Investigator.  Chief Christler then went on to say that "in 32
       years with the state police, he never knew anyone who had ranked in the Guard
       and Reserve <u>and</u> in the Police Department."

29.    Plaintiff told him it was pretty sad that Plaintiff would be a Lieutenant Colonel in
       the Army before he retired from the Village of Newark Police Department,
       however, would still be a Patrolman in the Village of Newark Police Department.
       The Chief said being a police supervisor is a full time job and, Plaintiff "wouldn't
       be able to handle the responsibility of both".  This was the first meeting between
       Plaintiff and Chief Christler.

30.    In late September, or early October, 2008, Plaintiff told the Union President that
       he was going to let Chief Christler know that while he was out due to his military
       obligations he would work a shift here and there for the Village of Newark Police
       Department because the Department low on manpower.  The Union President
       told Plaintiff not to bother.  The Mayor had said "the Village didn't want anything
       to do with anything with [Plaintiff's] name on it".

31.    Plaintiff spoke to Chief Christler about this a few days later who denied any
       knowledge that there was ever anything negative said about Plaintiff.

32.     Plaintiff offered to fill in a shift on any weekend for an Officer that might want the time off.  The Chief told Plaintiff that Plaintiff "wasn't the Board's favorite child right now".

33.     Plaintiff has never been written up or reprimanded by any one from the Village of Newark or the Village of Newark Police Department.

34.     Despite his offer to the Village of Newark, Plaintiff was never contacted to work a shift.

35.     In November, 2008, Plaintiff was served a subpoena to a Grand Jury for a case that he worked on at the Village of Newark Police Department.  When Plaintiff turned in his time slip in to the Chief Christler, the Chief refused to pay him.  The Union became involved and Plaintiff did eventually receive pay for his time under the subpoena.

36.     In December, 2008, Plaintiff requested the Village to pay for him to attend Penn State World Campus so he could attain a Bachelors Degree in Administration of Criminal Justice.

37.     This schooling is provided for and is part of the police contract between the Village of Newark and Plaintiff's Union.

38.    Plaintiff's request was denied and Chief Christler said he had never received
       Plaintiff's request.

39.    Thereafter, Chief Christler and the Village of Newark Town Board refuted their
       earlier contention by indicating that Plaintiff was denied the schooling because
       he already had a  a four year degree and they "**would not pay while he was on
       Military leave**".

40.    The Union filed a grievance and there was an Arbitration in August, 2009.

41.    In March, 2009 the Village posted a School Resource Officer (SRO) position.

42.    Plaintiff applied for the SRO job feeling that he was the most qualified person in
       the department due to the fact that he holds a Bachelors Degree in Physical
       Education K-12 from SUNY-Cortland.  Plaintiff taught DARE in Lyons for two
       years and he  had already attended and been certified as an SRO by the State
       of New York.

43.    Chief Christler went to at least two other officers in the department asking them
       to put in for the job on several occasions so that he could give the position to an
       officer other than Plaintiff.

44. Ultimately, Plaintiff was the only one to apply and was given an interview by two
    school Principles and the current SRO/Juvenile Investigator.

45. After the interview, one of the Principles shook Plaintiff's hand and said great
    interview.

46. Plaintiff called the Juvenile Investigator that night who told Plaintiff it went well
    and Plaintiff had nothing to worry about.

47. Plaintiff supplied four letters of recommendation which included a teacher from
    Lyons the current SRO from Lyons (a Teacher Plaintiff  student taught for) and
    the Chief of Police from the Village of Lyons.

48. None of Plaintiff's references were ever contacted.

49. In May, 2009, Plaintiff was contacted by the Juvenile Investigator he interviewed
    with and told that at a meeting the night before, Chief Christler and the school
    Superintendent decided to re-post the position and the comment was made that
    they "questioned [Plaintiff's] commitment due to [Plaintiff's] military obligation."

50  The next day, also in May, 2009, Plaintiff received an e-mail from the Chief
    Christler stating that the position had been tabled and would be re-posted again.

51.    The reason that the position was tabled and re-posted was because Plaintiff was
        the only one who applied for the position and due to his military status and
        obligations Chief Christler was not going to give him the position.

52.    The Juvenile Investigator went to Chief Christler and asked if anyone else had
        applied for the SRO position. When Chief Christler said "no" the Juvenile
        Investigator asked if Plaintiff was getting the job to which the Chief responded
        "yes". The Juvenile Investigator asked if Plaintiff had been told he was getting
        the job. The Chief replied "nope".

53     During this re-posting time, the Chief went to a new officer, Officer DeBorder,
        and asked Officer DeBorder to put in for a Sergeant position.

54.    Officer DeBorder was not interested in applying for a Sergeant position. Chief
        Christler then sent two investigators (Warren and Verstreet) to coerce DeBorder
        to apply for a Sergeant position.

55.    This is an occurrence that has happened each and every time the exam for
        Sergeant came up, a total of three times thus far.

56     Plaintiff was appointed as "School Resource Officer" and was slated to start
        September 8, 2009.

57.   Plaintiff then found out he scored number three on Sergeant's Exam, and
      number two on Investigator's Exam. The Department said they will re-test
      because they said they didn't like the candidates because Plaintiff gets
      deployed.

58.   Plaintiff just wanted a promotion - he has tested and has education for either
      Sergeant or Investigator.

59    In August of 2009, results from the Sergeants examination came out.

60.   Plaintiff scored a 72.5. Ken Davis scored a 73.5 and Michael Patton scored a
      73. Plaintiff had the same number of questions right as the other Officers,
      however, civil service gives extra points for the years they have served.

61.   Another Sergeant position opened up again at end of October, 2009.

62.   Plaintiff was again passed up for the Sergeant position. He was told he was "you
      haven't really been here so we don't know what your capable of and how you
      work" and "you're not around enough".

63.   The only place Plaintiff has been, however, is on leave for active duty serving our
      country in the United States Armed Forces.

64.    The Sergeant position was given to Ken Davis who was a School Resource
       Officer and was kicked out of the school for bring drunk. The Deputy told Davis
       not to come back to the school.

65.    Additionally, while Plaintiff was not number one on the Sergeants' list for the
       October of 2009 promotion, he was more qualified than the other individual who
       was promoted. Further, Plaintiff had been number one on the Sergeants' list for
       the entirety of the time prior to this and was still passed up for promotion.

## FIRST CAUSE OF ACTION
## Discrimination in Violation of USERRA

66.    Plaintiff repeats and re-alleges by reference each and every allegation contained
       in the above stated paragraphs  and incorporates the same herein as though
       fully set forth.

67.    USERRA disallows an employer from discriminating against a person who is a
       member of or has an obligation to perform service in a uniformed service by
       denying any such person initial employment, re-employment, retention of
       employment, promotional opportunities, or any other benefit of employment on
       the basis of that membership, performance of service, or obligation.

68.    Defendants and its agents, engaged in a continuing pattern of unremedied
       discrimination on the basis of Plaintiff's military status, membership, performance

of service and obligation by denying Plaintiff employment, re-employment,
promotional opportunities, and other employment benefits on the basis of that
membership, performance of service and obligation in violation of 38 U.S.C. §§
4311 and 4312.

69. As a direct and proximate result of defendant's willful, knowing and intentional
discrimination against him, Plaintiff has suffered a loss of reputation and will
continue and mental anguish and emotional anguish and emotional distress; he
has suffered and will continue to suffer a loss of earnings and other employment
benefits and job opportunities.  Plaintiff is thereby entitled to general and
compensatory damages in amounts to be proven at trial.

70. As a further and proximate result of defendant's violations of USERRA, Plaintiff
has been compelled to retain the services of counsel in an effort to enforce the
terms and conditions of the employment relationship with defendant and each of
them, and has thereby incurred and will continue to incur, legal fees and costs,
the full nature and extent of which are presently unknown to the Plaintiff; Plaintiff
requests that attorney fees be awarded.

71. Plaintiff is informed and believes, and based thereon alleges, that the
outrageous conduct of defendant described above was done with fraud,
oppression and malice, with conscious disregard for their rights, and with the
intent, design, and purpose of injuring him. Plaintiff is further informed and

believes that defendant authorized, condoned and/or ratified the unlawful conduct alleged herein, specifically. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from all defendants in a sum to be adduced at trial.

## SECOND CAUSE OF ACTION
## Retaliation in Violation of USERRA

72.   Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs  and incorporates the same herein as though fully set forth.

73.   The USERRA not only protects employees from discrimination based on their military status, membership, performance of service and obligation, employees are also protected from any adverse employment action taken when they have asserted their USERRA rights.

74.   Defendants and its agents, engaged in a continuing pattern of unremedied retaliation on the basis of Plaintiff's assertion of his rights under USERRA and discrimination on the basis of military status, membership, performance of service and obligation by denying Plaintiff employment, re-employment, promotional opportunities, and other employment benefits on the basis of that membership, performance of service and obligation in violation of 38 U.S.C. §§ 4311 and 4312.

Page -15-

75. As a direct and proximate result of defendant's willful, knowing and intentional discrimination against him, Plaintiff has suffered a loss of reputation and will continue and mental anguish and emotional anguish and emotional distress; he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

76. As a further and proximate result of defendant's violations of USERRA, Plaintiff has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendant and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff; Plaintiff requests that attorney fees be awarded.

77. Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of defendant described above was done with fraud, oppression and malice, with conscious disregard for their rights, and with the intent, design, and purpose of injuring him. Plaintiff is further informed and believes that defendant authorized, condoned and/or ratified the unlawful conduct alleged herein, specifically. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from all defendants in a sum to be adduced at trial.

DATED:      November 10, 2009
            Rochester, New York

**CHRISTINA A. AGOLA, PLLC**

**/s/ Christina A. Agola**

Christina A. Agola
Attorney for Plaintiff
2100 First Federal Plaza
28 East Main Street
Rochester, New York 14614
(O)585.262.3320
(F)585.262.3325
cagola@agolalaw.com